State, for use of Floyd, *v.* McCrory, Sheriff, *et al.*

(In Banc. Sept. 23, 1946.)

[27 So. (2d) 365. No. 36150.]

Ernest L. Shelton, of Jackson, for appellant.

**O. B. Triplett, Jr.**, and **Nichols & Huff**, all of Forest, for appellees.

**McGehee, J.**, delivered the opinion of the court.

This is a suit against the sheriff and his official bond for damages for the alleged false arrest and imprisonment of Tressie Mae Floyd, a minor, who is about eleven years of age, and who, according to the testimony of the sheriff and his deputy, which the jury found to be true, chose to go to jail with her mother, who was lawfully arrested under a warrant on a charge of assault and battery with intent to kill and murder, rather than stay at the home of her grandfather, who was willing to take care of her pending the return of the father to the home that afternoon or until her mother was released on bond.

The suit is in the name of the State through the child's mother and next friend, and the mother testified that the sheriff required that she ''get the children ready'' and take them to jail with her instead of waiting for her husband's return to their home; and that the sheriff then promised the mother that he would take her by a sawmill were her husband was at work and permit her to leave the children with him, and that the sheriff thereafter refused to do so.

On the contrary, the sheriff and his deputy testified that they waited at the home for two hours or longer for the return of the husband, who, it was claimed, was expected to return at most any moment, and that there was no agreement on the part of the officers to take the children to their father at the sawmill. That as a matter of fact the sheriff, when en route to the home of Mrs. Floyd, went by the home of the justice of the peace, procured a blank bond, ascertained the time at which it should be made returnable, advised the accused of her right to make bond, and thereafter carried her and the children by the home of her father in order that he might sign the bond upon the agreement of the sheriff to get other sureties to sign the same with him; that the grandfather of the children declined to sign the bond but expressed a willingness to take care of the children pending

the execution of a bond and that when the children were unwilling to stay at their grandfather's and insisted on going on to jail with their mother, the sheriff, at her instance and request and in accord with the wishes of the children, permitted them to remain in her custody and accompany her into the jail. That the sheriff did not arrest the children at all and had no complaint against them, and they were not placed in jail against their will but in compliance with their desire and the mother's request in that behalf. That immediately upon arrival at the county site the sheriff undertook to communicate with a prospective bondsman, whose name was suggested to him by the mother, and who with other sureties made her bond about 10 o'clock that night after the mother and children had remained in jail for approximately three hours.

Complaint is further made that they were placed in jail where a drunk man and a negro woman were also confined. It was shown, however, by the testimony for the defendants herein, that these two prisoners were locked up in their own cells; that the sheriff was considerate of the accused and her children in every way, caused clean sheets and pillow cases to be placed on the beds in the room where they stayed until her release on bond, and that he violated no official duty towards them.

We are, therefore, of the opinion that under the version given by the sheriff and his deputy, which the jury had a right to believe, there was no willful or wanton conduct shown on the part of the officers and that they had done everything that could have been reasonably expected of them to avoid the placing of the children in jail. That the sheriff did not take the children into his custody against their will but merely permitted them to remain in the custody of their mother in keeping with their desire and at her request.

There is no question of a contract being involved to which a minor is incapable of giving consent. The issue is whether the sheriff placed the little girl in jail against

her will or merely permitted her to go in there with her mother at the instance of both. If under the circumstances disclosed by the testimony of the sheriff and his deputy there is liability on the part of the officers for false arrest and imprisonment, or for false imprisonment, then it would follow that a sheriff could never permit a person under 21 years of age to enter the jail and visit a parent, even with the consent of both the parent and such minor.

There are certain legal rules which in the abstract may tend to support the contention that a false imprisonment is involved where a child, against whom no criminal charge is pending, is placed in jail, but when the reason for the application of such rules is lacking, as in the instant case, they can not be invoked to sustain an action against the officers, and especially where the jury is warranted in believing that the child was not imprisoned against his or her will.

Moreover, we think that the contention made to the effect that the sheriff should have invoked the procedure provided for by our juvenile statutes, is not well taken. The sheriff with a valid warrant to execute is not required to delay action thereon until a hearing can be had before a juvenile court and some disposition made of the children of an accused, and especially where the latter insists on keeping the children under his or her own care and custody pending the execution of an appearance bond, instead of compelling them pending the return of the other parent which is expected before nightfall, to remain with a near relative who is willing to care for them in the meantime. We are, therefore, of the opinion that the plaintiff was not entitled to a peremptory instruction against the officer and his official bond as contended for, but that the issue was one for the jury under the conflicting evidence, and that hence the verdict of the jury and judgment of the court denying liability should be affirmed.

**Smith, C. J.**, took no part in this decision.